[Civil No. 3564. Filed October 5, 1935.]

[50 Pac. (2d) 20.]

STATE OF ARIZONA, for the Use and Benefit of Edward Pierson and A. A. Pierson, Doing Business as Pierson Construction Company, Appellant, v. C. G. WILLIS & SONS, INC., a Corporation, and PACIFIC INDEMNITY COMPANY, a Corporation, Appellees.

Mr. L. J. Cox, for Appellant.

Messrs. Ellinwood & Ross, Mr. William H. Mackay and Mr. Joseph S. Jenckes, Jr., for Appellees.

LOCKWOOD, C. J.—This is a suit by the state of Arizona, for the use and benefit of Edward Pierson and A. A. Pierson, doing business as Pierson Construction Company, the Piersons being hereinafter called plaintiffs, against C. G. Willis & Sons, Inc., a corporation, hereinafter called the contractor, and Pacific Indemnity Company, a corporation, hereinafter called the company, to recover what is claimed to be a fair and equitable amount covering costs incurred by plaintiffs as preliminary to the construction of certain work which they had contracted to do on a public highway in the state of Arizona, which work they were prevented from performing by reason of a cancellation of the work by the state. A. V. Montin, Lola Thurman and M. G. Axman were also named as defendants, but were never served.

The plaintiffs filed a number of complaints, to which demurrers interposed by the contractor and the company were sustained with leave to amend, but, when a demurrer was sustained to their fifth amended complaint, elected to stand thereon, and judgment was rendered in favor of the contractor and the company, and from such judgment this appeal was taken.

There is but one question before us, and that is whether the fifth amended complaint states a cause of action against the contractor or the company, or either of them. It is therefore necessary for us to examine the allegations of the complaint. Since it consists of some thirty-seven typewritten pages, we think it best merely to summarize the essential parts thereof sufficiently so that the issue involved and our ruling thereon may be properly understood. These allegations may be stated in a narrative form as follows: On the 29th day of May, 1931, the contractor entered into a contract with the state of Arizona to furnish all labor and material for the construction of

a highway designated as Globe-Showlow EFA 99–B. Certain standard specifications issued by the state highway department were expressly made a part of the contract; the particular part thereof material for a consideration of this case reading as follows:

"The Engineer reserves the right to make such alterations in the plans or in the quantities of the work as may be considered necessary or desirable, and no conditions or provisions of the contract shall be thereby avoided or abated; provided, that all alterations shall be ordered in writing, and that equitable adjustments of compensation satisfactory to the contractor shall be made when such alterations involve an aggregate increase or decrease of more than twenty (20%) per cent of the total cost of the work, calculated from the original proposal, quantities and the contract unit price; provided, further, that before work is started on any such alterations aggregating over the said twenty (20%) per cent a Supplemental Agreement setting forth the adjustment shall be executed by the State Engineer and the Contractor. The contractor shall perform the work as increased or decreased."

The contractor thereupon executed its bond in favor of the state of Arizona with the company as surety thereon. This bond was in the sum of nearly $275,000, and contained, among other things, the following clauses:

" . . . That if the Principal herein shall faithfully and truly perform, observe and comply with the terms, conditions and provisions of the said contract, . . . and shall promptly pay all laborers, mechanics, sub-contractors and materialmen, and all persons who shall supply such laborers, mechanics, or subcontractors with material supplies or provisions for carrying on such work, all just debts, dues and damages incurred in the performance (Bond for Performance of contract, 4–2–31, Sheet 1 of 3) of such work. . . .

"All rights and benefits of the foregoing bond shall enure to the benefit of any and all creditors of said principal and Contractor for any and all claims, bills, accounts, and demands made and contracted and incurred for or on account of the labor or services performed, material, supplies, or provisions furnished. . . . "

Thereafter the contractors subcontracted a certain portion of their work to A. V. Montin, Lola Thurman and M. G. Axman, doing business as A. V. Montin. We shall hereafter refer to this partnership as Montin. This contract contained, among other things, the following provision:

"Whereas, the work to be performed by the C. G. Willis & Sons, Inc., a corporation, under the terms of said agreement between the said C. G. Willis & Sons, Inc., a corporation, and the State of Arizona is set forth in the bidding Schedule, Item 1 to 30 inclusive thereof, made a part of said agreement, and to which reference is hereby made, . . .

"(4) It is further agreed: That the proposal, plans, Standard Specifications, issue of October, 1930, of the State of Arizona, special specifications and extra special provisions dated April 2, 1931, contained in the said contract between the said C. G. Willis & Sons, Inc., a corporation, and the State of Arizona, are hereby referred to and made a part of this contract and shall have the same force and effect as though all the same were fully inserted herein."

Montin subsequently entered into a subcontract with plaintiffs which contained, among other things, this provision:

" . . . Further that all work performed by the second party under this agreement shall be in accordance with said plans and specifications and shall be under the direct supervision of the resident engineer in charge of the work on said project. Further that this agreement is subject to all of the provisions of a certain contract by and between C. G. Willis & Sons and A. V. Montin."

The particular work to be done by plaintiffs was the construction of certain concrete retaining walls, one large one containing nearly 1300 cubic yards, and several small ones containing an aggregate of a little over 400 cubic yards. Plaintiffs commenced work under their contract and completed the smaller walls, expending some $5,000 in doing that work and in preparing for constructing the larger wall, which necessarily had to be built after the smaller ones were finished. Before the large wall could be built, the contractor was directed by the state highway department to omit it, and plaintiffs were in turn notified not to erect it. Montin thereupon paid plaintiffs in accordance with their contract for the work actually constructed, which amounted to about $2,000, but refused to make any payments or adjustment for the amount which they had expended in preparing for the construction of the larger wall, whereupon plaintiffs brought this suit for the amount which they claimed covered all items of cost incurred by them in such preparation prior to the date of cancellation, in furtherance of their contract. This, we think, summarizes the complaint sufficiently for the purpose of determining whether the demurrer was properly sustained or not.

It is the position of plaintiffs that, by the various provisions of the contracts above set forth, they were entitled to the benefit of that particular clause in the specifications which entitled the contractor to an equitable adjustment of compensation in case the state engineer decreased the amount of the total cost of the work more than 20 per cent., and that the phrase "total cost of the work," as it appeared in such clause, interpolated by reference in *their* contract, meant 20 per cent. of the cost of the work which *they*

were to do. It is the position of defendants (1) that the clause of the specification in regard to equitable adjustments when the work was decreased does not inure to the benefit of plaintiffs herein; (2) that the bond given by the company does not inure to the benefit of any but the first subcontractor; (3) that plaintiffs are not "creditors" within the meaning of that clause of the bond entitling creditors of the contractor to sue thereon; (4) that, even if plaintiffs are entitled to the benefit of the specifications and bond above referred to, they must show affirmatively that the state engineer decreased the total cost of the work set forth in the original contract by more than 20 per cent., and that it is not sufficient that it decreased the cost of plaintiff's subcontract by more than 20 per cent.

We think it unnecessary to discuss more than the last proposition set up by defendants. Assuming for the sake of argument that the specification relied on did become a part not only of the contract between the state and the contractor, but also a part of that between the contractor and Montin, and the one between Montin and plaintiffs, and assuming that the bond did inure to the benefit of plaintiffs as well as to that of the direct subcontractor of the original contractor, and assuming that plaintiffs fall within the meaning of the word "creditors" as it appears in the clause of the bond above set forth, we think the complaint still fails to state a cause of action. Plaintiffs necessarily rely entirely for their right of action on the clause of the specifications first above set forth on the theory that it is a part of each of the three contracts above referred to. If this be true, they must take the clause as it is, and cannot claim its benefits without being subject to its restrictions. Upon examining the clause, it is

plain that it refers to the total cost of the work in the original contract between the contractor and the state. It is only in case the decrease in the work ordered by the state engineer amounts to more than 20 per cent. of *such costs* that the contractor is entitled to equitable adjustment of compensation, and this limitation necessarily runs through every contract of which the specifications may become a part. If this were not true, a most unjust situation would arise. The reduction of the work was made by the highway engineer by virtue of this specification. The original contractor was compelled to accept the reduction, and, if it amounted to less than 20 per cent. of his contract, he received no adjustment of compensation for the reduction. Notwithstanding this, it is plaintiffs' contention that the original contractor and its bondsmen must pay them for *their* loss occasioned by the order of the highway engineer, when it may not recover anything from the state for its loss through the same order.

When there are two possible constructions of a contract, one of which would be highly unjust, and the other one in consonance with equitable principles, the latter should be adopted. While it is unfortunate that plaintiffs must lose by reason of the action of the highway engineer, they cannot recover such loss from the contractor and the company, when the very clause of the specifications on which they must base their claim for recovery shows that it applies only to a state of facts which is not alleged in the complaint to exist.

For the foregoing reason, to wit, that it is not alleged that the total cost of the *original* contract was decreased more than 20 per cent. by the elimination of the retaining wall in question, the trial court correctly sustained the demurrer to the complaint

and rendered judgment in favor of defendants. The judgment appealed from is affirmed.

McALISTER and ROSS, JJ., concur.